IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, Plaintiff, | ) | 8:11CV233 |
| v. | ) | |
| GRACE ELIZABETH REISINGER and ROF CONSULTING, LLC, Defendants. | ) | MEMORANDUM OPINION |

This matter is before the Court on the motions of defendant Grace Elizabeth Reisinger (Reisinger) to transfer venue pursuant to 28 U.S.C. § 1404(a) (Filing No. 15) and to dismiss pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) (Filing No. 18). Reisinger seeks to change venue from this district to the United States District Court for the Northern District of Illinois ("Illinois District Court").

Plaintiff U.S. Commodity Futures Trading Commission (the "Commission") has previously filed another action wherein Reisinger is a defendant, *CFTC v. New World Holdings, LLC, et al.*, No. 1:10CV4557, in the Illinois District Court ("the Illinois Case") (Filing No. 16, at 1). The Illinois Case is ongoing.

In this action, the Commission opposes both of Reisinger's motions. Having reviewed the motions, the parties' briefs and evidentiary submissions, and the applicable law, the

Court finds Reisinger's motion to transfer venue should be granted. An order on the motion to dismiss is deferred to the transferee Illinois District Court.[1]

## I. Factual Background.

The Commission is a federal regulatory agency, with its headquarters in Washington, D.C. The attorneys who are prosecuting this case have their offices at the headquarters in Washington, D.C. The Commission has an office in Chicago, Illinois, but no office in Nebraska.

Defendant Reisinger lives in Grand Island, Nebraska. From her home in Grand Island, Reisinger operates "a branch office of New World Holdings, LLC, a Chicago-based introducing commodity broker" (Ex. 1, Filing No. 15, at 1), which is the subject of the Illinois Case already before the Illinois District Court.

Defendant ROF Consulting, LLC ("ROF") was "an Alaska limited liability company with principal place of business in North Carolina" (Filing No. 16, at 2). ROF was organized by Larry Alan Matthews (now residing in Charlotte, North Carolina), James Green (now residing in San Diego, California), and Nancy

[1] "When an action is transferred, it remains in the posture it was in and all further proceedings in the action merely are referred to and determined by the transferee tribunal, leaving untouched whatever already has been done in the transferor court." 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3846 (3d ed. 2007).

Dadey (Reisinger's mother, now deceased) (Filing No. 16, at 2-3). Reisinger was a manager and "controlling person" of ROF (Filing No. 1, at 4). Reisinger resigned as a member of ROF on April 16, 2008 (Ex. 1, Filing No. 15, at 5). ROF was dissolved on February 2, 2009 (Filing No. 16, at 2).

On June 29, 2011, the Commission filed a complaint praying for "injunctive and other equitable relief and for penalties under the Commodity Exchange Act" (the "Act") (Filing No. 1, at 1). The complaint lists six counts alleging violations of the Act, including failure to register as a community pool operator, failure to lawfully file exemption notices, failure to furnish account statements and annual reports, and three counts of fraud.

## **II. Applicable Law.**

The change of venue statute reads as follows: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "The statutory language reveals three general categories of factors that courts must consider when deciding a motion to transfer: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice." *Terra Int'l v. Mississippi Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997). However, a district court is not limited to

consideration of only "these enumerated factors. Instead, courts have recognized that such determinations require a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors." *Id.* In any event, "[T]here is no exhaustive list of specific factors to consider." *Id.*

**III. Discussion.**

Here, Reisinger claims that the Northern District of Illinois is a district where the action "might have been brought," as required by section 1404(a) (Filing No. 15, at 1). The Commission does not dispute this claim. Instead, the Commission states, "[T]he convenience of the parties and witnesses, the interests of justice, and the local interests of this District [of Nebraska] favor denying Reisinger's Motion and keeping this litigation in the District of Nebraska" (Filing No. 22, at 2).

**A. Convenience of the Parties.**

The Commission is headquartered in Washington, D.C., and has a branch office in Chicago. The Commission notes that its undersigned counsel work out of the Washington, D.C., office. Without further elaboration, the Commission concludes, "Therefore, the Northern District of Illinois is a less convenient venue to the Commission than the District of Nebraska" (Filing No. 22, at 7).

Although Reisinger lives in Grand Island, Nebraska, she "will voluntarily appear as a witness at the trial of the case" in the Illinois District Court (Ex. 1, Filing No. 26, at 1). The Court understands Reisinger's motion to change venue to focus on factors other than her own geographic convenience. Nevertheless, Reisinger does claim that Chicago would be more convenient for her because she already has Illinois counsel representing her in the Illinois Case.

The only remaining members of defendant ROF at the time it dissolved live in North Carolina and California.

With regard to the parties' convenience in accessing records and documents, Reisinger points out that the National Futures Association, located in Chicago, "will have relevant documents concerning the disputed filing" (Filing No. 16, at 6). Reisinger also claims that records of three named brokerage firms relevant to the action are located in Chicago (Filing No. 16, at 6).

On the other hand, the Commission alleges, "All of [Reisinger's] business records, together with the e-discovery contained within the computers she used to operate her fraudulent scheme, are located in the District of Nebraska" (Filing No. 22, at 1). Yet Reisinger claims that she "has already made extensive production of documents to plaintiff in its pre-filing investigation and in the pending case in Illinois" (Filing No.

25, at 5). The Commission does not claim that it has had any difficulty obtaining documents from Reisinger.

The Court finds that the convenience of the parties does not support venue in the District of Nebraska.

**B. Convenience of the Witnesses**.

"Convenience of the witnesses is a primary, if not the most important, factor in considering a motion under § 1404(a)." *Biometics, LLC v. New Womyn, Inc.*, 112 F. Supp. 2d 869, 876 (E.D. Mo. 2000). However, the "sheer numbers of witnesses will not decide which way the convenience factor tips." *Terra*, 119 F.3d at 696.

Reisinger identifies seven named individuals and one organization, all based in Chicago, that are "primary potential witnesses" (Filing No. 16, at 3-4; Filing No. 25, at 5). The Commission names several "primary witnesses who are anticipated to testify": Reisinger and her Nebraska counsel; unnamed "corporate designees of the banks used by Reisinger," located in Nebraska; one witness from Chicago; and one witness each from Long Beach, California, San Diego, California, and Charlotte, North Carolina (Filing No. 22, at 7-8).

In addition, the Commission states that various pool participants, none of whom reside in the United States, may be called as witnesses (Filing No. 22, at 8). The Court notes that there is no international airport in Nebraska. The Court is

aware that there are a few direct flights from Washington, D.C., into Omaha. Nevertheless, airline travel from most cities is easier into Chicago than it is into Omaha. The Commission also suggests that the action might be transferred to Lincoln, Nebraska, which would offer even fewer flights than Omaha, or would add another hour's drive to the trip to Omaha.

The Court finds that Chicago is a more convenient location than either Omaha or Lincoln, Nebraska, for a large majority of the potential witnesses named by Reisinger and the Commission.

**C. Interests of Justice**.

"In general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted." *Terra*, 119 F.3d at 695. "It is also true that a party seeking transfer bears the burden of showing that the balance of § 1404(a) factors 'strongly' favors the alternative forum. But these presumptions may carry somewhat less weight when, as here, the plaintiffs do not reside in the district in which they sued." *Schoemann ex rel. Schoemann v. Excellus Health Plan, Inc.*, 447 F.Supp. 2d 1000, 1004 (D.Minn.,2006) (citations omitted).

The Commission is headquartered in Washington, D.C., and has an office in Chicago, but it has no presence in Nebraska.

The Court finds the *Schoemann* court's argument persuasive that the plaintiff Commission's choice of forum should "carry somewhat less weight." *Schoemann*, 447 F.Supp. at 1004.

**D. Local Interests of the District of Nebraska.**

In this case, the Commission points out that "the Act provides that the Commission may bring actions to enforce its provisions in the district 'wherein the act or practice occurred, is occurring, or is about to occur'" (Filing No. 22, at 10 (quoting 7 U.S.C. § 13a-1(e))). Yet, in its entirety, 7 U.S.C. § 13a-1(e) states:

> Any action under this section may be brought in the district wherein the defendant is found or is an inhabitant or transacts business or in the district where the act or practice occurred, is occurring, or is about to occur, and process in such cases may be served in any district in which the defendant is an inhabitant or wherever the defendant may be found.

7 U.S.C. § 13a-1(e). Thus, the statute provides for more flexibility in choice of venue than the Commission's brief would indicate.

In its brief, the Commission states that "from at least February 28, 2005 to October 26, 2009 Defendant Reisinger operated a fraudulent scheme and [a] commodity pool . . . from her home office in Grand Island," citing paragraphs 1 and 16 of

the complaint (Filing No. 22 at 2). Paragraph 1 of the complaint does not refer to the location of Reisinger's alleged activity. Paragraph 16 merely identifies the Commission; presumably the Commission meant paragraph 17. Paragraph 17 again mentions that Reisinger lives in Grand Island. It also states,

> Reisinger, together with ROF, operated the [commodity pool] from her residence in Nebraska utilizing an account at a futures commission merchant . . . located in Chicago, Illinois. During the time Reisinger committed the violations of the Act and Commission Regulations, she was registered as an associated person . . . of Chicago Illinois introducing broker . . . New World Holdings, LLC . . . and acted as its branch manager.

(Filing No. 1, at 6). If anything, the Commission provides a stronger case for the Northern District of Illinois than for the District of Nebraska.

Similarly, in its brief, the Commission cites paragraphs 43-51 of the complaint, but the alleged activities in those paragraphs have no geographical indicia (Filing No. 22, at 3 (citing Filing No. 1, at 12-14)). However, elsewhere in its complaint, the Commission alleges that Reisinger and ROF "regularly conducted business in Chicago, Illinois by utilizing [a futures commission merchant] in Chicago, and attending business meetings in Chicago, among other things" (Filing No. 1, at 11). This statement establishes that Reisinger "transacts

business" in the Northern District of Illinois, so that venue there would comply with the venue statute of the Act, 7 U.S.C. § 13a-1(e).

The Commission does state that "nearly $500,000 in funds belonging to participants in the [commodity pool] remain on deposit in the District of Nebraska. No participant funds are located within the Northern District of Illinois" (Filing No. 22, at 2). However, the only detailed transfer of funds made by a pool participant as identified by the Commission's index of evidence was "a total of $249,918.91 to the Bank of America account of the Law Office of Mr. Caffray," who the Commission has located in Long Beach, California (Ex. 1, Filing No. 23, at 5 and Filing No. 22 at 8).

The Commission also includes evidence of a wire transfer request for $5,065 from ROF's commodity pool account at a Nebraska bank to Nancy Dadey (Ex. 1, Filing No. 23, at 17). Similarly, the Commission includes as evidence an email noting the transfer of $3,000 from ROF "to Nebraska" to fund a new account for ROF's commodity pool (Ex. 1, Filing No. 23, at 18). Finally, the Commission states that Reisinger received monthly statements from ROF's commodity pool fund account at her residence in Nebraska (Filing No. 1, at 19). Yet the pool fund account itself was with a futures commission merchant located in Chicago.

In sum, other than the two smaller transfers above and the receipt of monthly statements, the Commission does not identify any particular transactions that took place in Nebraska, nor does it identify any pool participants who live in Nebraska. The Commission does not identify why the District of Nebraska would have any particular local interest in the action, other than the fact that funds remain on deposit in Nebraska. The Commission repeatedly infers that because Reisinger engaged in activities while her place of business was located in Nebraska, the activities must have occurred in Nebraska, but the Commission provides scant evidence supporting this inference. In its brief, the Commission makes general claims that the alleged activities occurred in Reisinger's home. In spite of this, the only two interactions cited by the Commission between Reisinger and a particular pool participant allegedly occurred in Australia and "the United States" (Ex. 1, Filing No. 23, at 4-5). Reisinger claims that the meeting in "the United States" took place in Chicago (Filing No. 25, at 5).

The Court notes that the Commission chose the venue of the Illinois District Court for the Illinois Case wherein Reisinger is already a defendant (Filing No. 16, at 1). The Court finds that for the convenience of the parties and the witnesses and in the interest of justice, Reisinger's motion to transfer the action to the Illinois District Court should be

granted. A separate order will be entered in accordance with this memorandum opinion.

DATED this 24th day of October, 2011.

BY THE COURT:

/s/ Lyle E. Strom

LYLE E. STROM, Senior Judge
United States District Court